**Jane KATZ, an infant, by Elaine Finsilver, her mother and next friend, Ira Resnick, an infant, by Rheba Resnick, his mother and next friend, Carey Marvin, an infant by Vera Marvin, her mother and next friend, and Greg Gottlieb, an infant, by Sybil Gottlieb, his mother and next friend, on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,**

**v.**

**John McAULAY, as President of the Board of Education of the Union Free School District No. 5, Ardsley, New York, and Burt P. Johnson, Superintendent of Schools of the Union Free School District No. 5, Ardsley, New York, Defendants-Appellees.**

No. 251, Docket 35144.

United States Court of Appeals, Second Circuit.

Argued Dec. 1, 1970.

Decided Feb. 11, 1971.

J. Joseph Smith, Circuit Judge, dissented and filed opinion.

Neal M. Goldman, New York City (Paul G. Chevigny, New York City, on the brief), for plaintiffs-appellants.

John M. Johnston, New York City (White & Case, New York City, and Raymond W. Vickers, Brooklyn, N. Y., on the brief), for defendants-appellees.

Before FRIENDLY, SMITH and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

The New York Board of Regents has a rule, some forty-seven years old, which prohibits "soliciting funds from the pupils in the public schools."[1] Plaintiffs, four students at Ardsley High School, a public school in Westchester County, New York, brought this civil rights action for anticipatory relief against enforcement of that rule. Their action arose when school officials threatened plaintiffs with expulsion if they distributed on school premises leaflets soliciting funds from their fellow students.

More specifically, on February 6 and 9, 1970, plaintiffs distributed in the high school corridors a one-page leaflet entitled "Join the Conspiracy." In it they decried the prosecution of eight defendants then on trial in the District Court for the Northern District of Illinois and solicited funds for the "activists'" defense. The leaflet stated:

> "More than $33,000 per month is spent on their defense. Money is desperately needed to give these people a just trial. Money is needed to pay for transcripts. *PLEASE* contribute and/or buy a button from Jane Katz, Carey Marvin, Greg Gottlieb or anyone else who is helping out."

The dissemination of leaflets occurred before the school day began, and the affidavits of school officials contain no evidence of a specific instance of interference by the plaintiffs with the operation of the school or of any demonstrable collision with the rights of other students to be let alone. Nonetheless, school officials warned plaintiffs that their circulation of leaflets violated the Board of Regents rule and a local Board of Education rule forbidding any "outside organization * * * to use this School * * * for the dissemination or release of information by flyers * * *" without first obtaining written approval of the Board.

Asserting the First Amendment overbreadth of both rules,[2] plaintiffs sought a declaratory judgment declaring that

---

1. The Journal of Regents' Meetings records the adoption January 25, 1923 of a resolution prohibiting all solicitation of public school pupils. This resolution was modified in 1940 to permit solicitation of funds by the Junior Red Cross if that organization obtained the consent of local school authorities. The modified resolution is not included in the official Rules of the Regents but has been adopted by the Ardsley School Board as having binding effect.

2. Plaintiffs also claimed school officials had discriminated against their solicitation by permitting (1) the Junior Red Cross to solicit contributions and (2) the New York Times to sell its newspapers on school premises. The district court found the second contention frivolous and denied preliminary relief on the first upon the affidavit of the Superintendent of Schools to the effect that all solicitations of funds had been, and would continue to be, prohibited. We find no error in the denial of relief based upon allegedly discriminatory enforcement of the Board of Regents' rule.

"the policies, regulations and actions of the defendants \* \* \* are unconstitutional" and preliminary and permanent injunctions restraining defendants from taking disciplinary action against students distributing this leaflet or any other leaflet soliciting funds for causes involving "matters of public interest." The court below denied plaintiffs' motion for a preliminary injunction and found that the Board of Regents' rule "was not intended to prevent the exercise of free speech" but rather set forth a reasonable regulation "to protect school children from annoyance at the hands of solicitors eager, for one cause or another, to induce them to part with their pocket money." 324 F.Supp. at 1049. Pursuant to 28 U.S.C. § 1292(a)(1), plaintiffs appeal from this interlocutory order.

An application for a preliminary injunction is addressed to the judicial discretion of the district court, and this court will not set aside the disposition of such an application unless erroneous as a matter of law or the result of an abuse of judicial discretion. Hurwitz v. Directors Guild of America, Inc., 364 F.2d 67 (2 Cir.), cert. denied 385 U.S. 971, 87 S.Ct. 508, 17 L.Ed.2d 435 (1966); see Industrial Bank of Washington v. Tobriner, 132 U.S.App.D.C. 51, 405 F.2d 1321 (1968); 7 J. Moore's Federal Practice (2d ed.) ¶ 65.04 [1]. We therefore go no further into the merits of this action than is necessary to determine whether the trial court's assessment of the relative importance, on the one hand, of the rights asserted and, on the other, of the governmental interest the rule purports to protect, constituted an abuse of discretion. In this connection consideration must be given to the irreparable nature of the injury allegedly flowing from the denial of preliminary relief [3] and the likelihood of the applicants' ultimate success on the merits. See Unicon Management Corp.

v. Koppers Co., 366 F.2d 199 (2 Cir. 1966); Industrial Bank of Washington v. Tobriner, *supra* 405 F.2d at 1324.

■ The constitutional guarantee of free speech limits state power to regulate the personal intercommunication of secondary school pupils. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). From this premise plaintiffs contend the distribution of leaflets which "communicat[e] thoughts between citizens, and discuss . . . public questions," Hague v. CIO, 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939), is protected expression and that such expression is no less protected by virtue of the fact that solicitation of contributions is an integral part thereof. See Murdock v. Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L. Ed. 1292 (1943).

■ Assuming that plaintiffs' activity was "speech" within the meaning of the First Amendment, school officials had the burden of showing governmental interests which might justify their interference with that "speech." NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). The Supreme Court has repeatedly affirmed that such an interest lies in the implementation of "the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." Tinker v. Des Moines Independent Community School District, *supra*, 393 U.S. at 507, 89 S.Ct. at 737; see Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228, (1968). The exercise of such authority may not, however, abridge the free expression of students in the public high schools unless that expression "materially and substantially interfere[s] with the requirements of appropriate discipline in the operation of the school."

3. The district court was willing to presume, as are we, that irreparable harm is manifest where it is alleged that First Amendment rights have been chilled as the result of governmental action. See Schnell v. Chicago, 407 F.2d 1084, 1086 (7 Cir. 1969).

Tinker v. Des Moines Independent Community School District, *supra*, 393 U.S. at 509, 89 S.Ct. at 738.

Though the skeletal evidentiary matter before the trial court disclosed minimal potential interference at most, the probability that plaintiffs' overbreadth contention would prevail at trial is so slight that the denial of preliminary relief cannot be held to have constituted an abuse of discretion. Unlike the amorphous "regulations" in Sullivan v. Houston Independent School District, 307 F.Supp. 1328 (S.D.Tex.1969), the Board of Regents' rule articulated its proscription in terms of those non-expressive features of student conduct which raise a sufficiently high probability of harm—i. e. the pressures upon students of multiple solicitations [4]—to justify the Board's interference with such communicative conduct.

Pupils are on school premises in response to the statutory requirement that they attend school for the purpose of formal education. Where outside organizations or individuals espousing various causes seek to take advantage of the required assemblage of secondary school pupils, as a captive audience, to solicit funds, either directly or through the agency of some of the pupils, for their particular project or cause, they are in effect in competition for the time, attention and interest of the pupils with those who are seeking to administer the school system. Whether it is done a few minutes before school opens or a few minutes after, its effect is not so limited in time and it is plainly harmful to the operation of the public schools. If there is no regulation against it, literally dozens of organizations and causes may importune pupils to solicit on their behalf; and it is foreseeable that pressure groups within the student body are likely to use more than polite requests to get contributions even from those who are in disagreement with the particular cause or who are, in truth, too poor to afford a donation. The Board's regulation appears to be reasonable and proper and has a rational relationship to the orderly operation of the school system.

The rule's focus upon a demonstrable harm rather than an undifferentiated fear of disturbance distinguishes plaintiffs' action from Scoville v. Board of Education, 425 F.2d 10 (7 Cir. 1970). There, the complaint of students disciplined by school authorities, who were unable to prove a reasonable likelihood of substantial disruption which would follow the students' distribution of an underground newspaper, was held to state a claim for damages and declarative and injunctive relief. Though the underground newspaper was sold to students, the defendant school authorities did not act pursuant to an anti-solicitation regulation comparable to the Board of Regents' rule.[5]

Because the Board of Regents' rule afforded a sufficient basis for the denial of preliminary relief, we do not reach the same questions with respect to the local Board of Education rule upon which defendants may also have relied.

Affirmed.

---

4. The affidavit of the Superintendent of Schools states that some 75 to 100 requests to use school properties for solicitation of funds have been denied in the past twelve years.

5. This action is distinguishable as well from two lower court opinions filed after the denial of plaintiffs' motion. In the first of these, Eisner v. Stamford Board of Education, 314 F.Supp. 832 (D.Conn. 1970), aff'd 440 F.2d 803 (2d Cir. 1971) unlike the Board of Regents' regulation, a rule of prior restraint was found unconstitutional on its face.

The second decision, New Left Education Project v. Board of Regents, Civil No. A–69–CA–106 (W.D.Tex. Sept. 3, 1970), invalidated anti-solicitation rules regulating the conduct of university students. For purposes of this appeal, however, we proceed on the premise that a state may decide that the appropriate discipline which requires the restriction of certain communicative actions may differ in the cases of university students from that called for in the cases of the younger secondary school pupils in relatively similar circumstances.

**1062**

J. JOSEPH SMITH, Circuit Judge (dissenting):

I respectfully dissent. I agree that there are possibilities of embarrassment and disruption of school functions in solicitation of school students which might justify regulation not sustainable as to the public at large. But I think that when related to public issues such as that involved in this case, solicitation of funds is an integral part of the propagandizing, as in the case of the religious colporteurs, and freedom to do one includes freedom to do the other, at least in the absence of a showing of gross disruption, so that complete prohibition as opposed to reasonable regulation, as of time and place, cannot be sustained. See Cantwell v. Connecticut, 310 U.S. 296, 306–307, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). "[T]he pamphlets of Thomas Paine were not distributed free of charge." Murdock v. Pennsylvania, 319 U.S. 105, 111, 63 S.Ct. 870, 874, 87 L.Ed. 1292 (1943). So I think on a showing such as this the courts must protect the students in their efforts to communicate, misguided as we may consider them. I would reverse for issuance of a temporary injunction.