Eddie HULL, as Defense Captain of the Black Panther Party and the Black Panther Party, Plaintiffs-Appellants,

v.

August PETRILLO, individually and as Mayor of the City of Mt. Vernon, New York; James Ritz, individually and as License Clerk of the City of Mt. Vernon, New York; and Thomas Delaney, individually and as Police Commissioner of the City of Mt. Vernon, New York, Defendants-Appellees.

No. 343, Docket 35221.

United States Court of Appeals,
Second Circuit.

Argued Jan. 5, 1971.

Decided March 17, 1971.

Paul G. Chevigny, New York Civil Liberties Union, New York City, for plaintiffs-appellants.

Neal A. Permutt, Mt. Vernon, N. Y. (Arthur H. Ellis, Corp. Counsel, Mt. Vernon, N. Y.), for defendants-appellees.

Before LUMBARD, Chief Judge, MOORE and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Plaintiffs, the Defense Captain of the Black Panther Party and the Party, appeal from dismissal of their complaint under 42 U.S.C. § 1983 and 28 U.S.C. § 1343 and denial of their motion for the issuance of a preliminary injunction by the United States District Court for the Southern District of New York, Thomas F. Croake, *Judge*. The action was brought against the Mayor, license clerk and police commissioner of the City of Mount Vernon, New York, seeking declaratory judgment that Chapter 31 of the Ordinances of that city is unconstitutional. The complaint also sought a preliminary injunction and, after a hearing, a permanent injunction against the enforcement of the chapter and the harassing of plaintiffs in the exercise of their first amendment rights. The court below dismissed the complaint for failure to state a cause of action. Federal Rules of Civil Procedure, Rule 12(b) (6). Since affidavits outside the pleadings were considered by the court in reaching its decision, however, the court's action is more properly characterized as granting of defendants' motion for summary judgment, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. We find error in dismissal at this stage and reverse and remand for further proceedings so that the facts material and pertinent to the relief sought may be more fully developed upon the trial.

Plaintiffs distribute the Party's newspaper, "The Black Panther," by selling it on the streets of the city. In their complaint, plaintiffs charge that the Mount Vernon police have been involved in a campaign of harassment against them, for the purpose of driving both the newspaper and the Black Panther Party itself out of the city. Affidavits were submitted detailing instances of such harassment. One of the tools used in this alleged campaign is Chapter 31 of the Ordinances of Mount Vernon. The ordinance provides that "[n]o person shall sell or peddle any goods, wares, merchandise or other property" without first obtaining a license from the city. The provision imposes an annual license fee of fifteen dollars upon anyone carrying his merchandise. The license is granted by the mayor "to such persons as he shall deem proper."

There can be no doubt that if this statute were construed to apply to the sale of plaintiffs' newspaper, it would be unconstitutional. It has long

been established that "[a] state may not impose a charge for the enjoyment of a right granted by the Federal Constitution." Murdock v. Pennsylvania, 319 U.S. 105, 113, 63 S.Ct. 870, 875, 87 L.Ed. 1292 (1943). Cf. United States v. Texas, 252 F.Supp. 234, 254 (W.D.Tex.); aff'd 384 U.S. 155, 86 S.Ct. 1383, 16 L.Ed.2d 434 (1966). The ability to pay is not a legitimate criterion for the state to employ in determining who is to express his views on its streets and who is not. Therefore any fee imposed as a prerequisite to the exercise of the right to communicate ideas on the public sidewalks is an unconstitutional prior restraint upon the freedom of expression. In addition, the sweeping power granted the mayor by the terms of the ordinance to determine who is to receive a license goes well beyond the level of discretion permitted city officials in regulating the exercise of first amendment rights. Kunz v. New York, 340 U.S. 290, 294, 71 S.Ct. 312, 95 L.Ed. 280 (1951); Niemotko v. Maryland, 340 U.S. 268, 271, 71 S.Ct. 325, 95 L.Ed. 267 (1951).

Defendants in this case agree, however, that the ordinance does not mean and should not be construed to mean that the sellers of newspapers like the one distributed by plaintiffs are required to obtain a license. They express the belief that when the ordinance refers to "other property," it means property along the same commercial lines as is connoted by the terms "goods, wares, merchandise." However, plaintiffs allege and defendants do not deny that one successful prosecution was in fact brought against a member of the Black Panther Party for violating this ordinance. Plaintiffs do not allege any further enforcement of Chapter 31 against them. They do claim, however, that as late as the end of January, 1970, and then again in June, 1970, the police harassed and threatened them, usually while they were attempting to sell their newspaper.

■ In determining whether to grant declaratory judgment as to the constitutionality of this ordinance's application to plaintiffs, serious consideration must be given to the interests of plaintiffs in freedom to disseminate their political and social views without the danger of harassing prosecution. Although defendants now proclaim that they have no intent of using the ordinance against plaintiffs, "[s]o long as the statute remains available to the State the threat of prosecutions of protected expression is a real and substantial one." Dombrowski v. Pfister, 380 U.S. 479, 494, 85 S.Ct. 1116, 1125, 14 L.Ed.2d 22 (1965). In Dombrowski, the Supreme Court ordered the issuance of injunctions against prosecutions under the Louisiana subversive activities law. The reason for so holding rather than remitting Dombrowski to a defense of unconstitutionality during a criminal prosecution was the chilling effect which the threat of prosecution had upon the exercise of first amendment rights. In light of the alleged general harassment of plaintiffs in this case, the facts that Chapter 31 was only employed once and that the public officials now purport to reject its future use do not remove the ordinance from the scope of Dombrowski.[1]

1. The recent Supreme Court decisions concerning the scope of the Dombrowski doctrine, Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669; Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701; Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688; Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781, and Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (all decided February 23, 1971), do not alter the basis of this decision. Unlike these cases, this decision does not concern a situation where a federal court has been called upon to enjoin a pending state prosecution. Mr. Justice Black, speaking for the Court, stated in Harris, "We express no view about the circumstances under which federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun." 91 S.Ct. at 749. We think this is an appropriate case for federal relief. First, the complaint alleges bad-faith harassment by police and city officials. Second, it seems highly unlikely that the complainants' constitutional rights soon will be vindicated by

Defendants attempt to distinguish *Dombrowski* on the grounds that in that case, unlike the case at bar, there was a deliberately conceived and implemented plan of arrests, raids, indictments, and threats of indictments and of future prosecutions. First of all, whether or not harassment of plaintiffs in this case was deliberate is a question of fact, not to be determined on a motion for summary judgment. Secondly, although the alleged harassment of plaintiffs in this case is not nearly as pronounced as in *Dombrowski,* the difference in the degree of subtlety of the two campaigns may be primarily a function of their different locales. The same unconstitutional end may be accomplished by a protracted plan of subtle harassment as well as by blatant threats of improper legal action, and one ultimately may have no less of a chilling effect than the other. Without a definitive judicial interpretation denying the legality of its applicability to sale of plaintiffs' newspaper, the ordinance remains a potential tool in a campaign of harassment against the Black Panther Party, a campaign in which plaintiffs have alleged its use as such a tool is a reality. Moreover, viewing the affidavits in the light most favorable to plaintiffs, the more significant threat to their First Amendment freedoms might be found to arise from a general campaign of harassment by police and city officials, of which the use of Chapter 31 was only one aspect.

Plaintiffs' affidavits, which must be accepted as true at this stage, reveal a series of incidents between police and members of the Black Panther Party or vendors of the Black Panther newspaper. In December 1969 and January 1970, persons selling the Black Panther newspaper were taken to the police station and told either to stop selling the paper or to obtain a license, and then were released without charges. One such vendor, Bruce Johnson, was charged with violating Chapter 31, pleaded guilty and on January 7, 1970, received a conditional discharge for one year. Although city officials now claim that, at some point in the period between Johnson's conviction and filing of this action, the corporation counsel ruled that Chapter 31 did not apply to selling newspapers, that information was never conveyed to Bruce Johnson or the Black Panther Party, nor was it publicly announced.

In the ensuing months, threats to invoke Chapter 31 ceased, but there is some indication that the police established surveillance of persons selling the paper. Joseph Campbell, a police officer, revealed that he "purchased nearly every issue of the said paper," and was able to give the names of persons who sold the paper on several different occasions. On April 29, 1970, Black Panther Party members were arrested for putting up a poster setting forth their political ideas, and charged with violating chapter 4(1) of the Ordinances of Mount Vernon which requires a permit for posting "commercial or business advertising matter" and thus was plainly inapplicable. One of those arrested, Leo Woodberry, claims that he was threatened by police officers and that approximately fifty copies of the Black Panther newspaper were confiscated. On May 25, 1970, after the present action was filed, the charges were dismissed. Finally, Leo Woodberry claims that on June 5, 1970, while he was selling the paper, two police officers told him to keep moving and then watched him walk up and down the block.

The alleged incidents, taken together, could be construed to establish a campaign of harassment directed against sales of the Black Panther newspaper.

defending a state criminal prosecution. Third, in the absence of federal relief, the chilling effect upon the First Amendment rights of vendors of the Black Panther newspaper—a chilling that is not merely speculative but arises out of specific official actions directed against these plaintiffs—will continue unchecked. These elements of bad faith, harassment and irreparable injury justify federal intervention under equitable principles, as the Court specifically recognized in *Harris.*

If proved, federal injunctive relief would be justified on that ground, and the district court therefore should have denied the motion for summary judgment.

■ Defendants argue that a ruling by a federal court as to the constitutionality of the application of Chapter 31 would undermine the policy behind the judicial doctrine of abstention. That doctrine requires the federal judiciary to defer to state courts before ruling unconstitutional a state statute which is capable of an interpretation consistent with the Constitution. The purpose of abstention is basically twofold: to maintain a proper working relationship between the state and federal units of government, and to avoid premature constitutional adjudication in the federal courts. See Note, "Abstention: An Exercise in Federalism," 108 U.Pa.L.Rev. 226 (1959). Initially, however, we note that "[a]t least in actions under the Civil Rights Act the power of a federal court to abstain from hearing and deciding the merits of claims properly brought before it is a closely restricted one which may be invoked only in a narrowly limited set of 'special circumstances.'" Holmes v. New York City Housing Authority, 398 F.2d 262, 265 (2d Cir. 1968). See also, Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

■ In this case there is no real interest to be served by abstaining in favor of state court action, since the ruling by this court in no way undermines "the harmonious relation between state and federal authority," the preservation of which the courts have noted is one of the significant purposes behind the abstention doctrine. Railroad Commission of Texas v. Pullman, 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971 (1941). A decision by a district court in accord with the terms of this opinion would leave Chapter 31 fully intact for the purposes which defendants claim it was designed to serve, namely the licensing of commercial peddlers. Thus we are not presented with a situation where a ruling by a federal court will seriously interfere with the operation of a state or local legislative program before a state court has had an opportunity to limit the potential scope of that program so that it meets constitutional standards. Assuming that the district court finds as fact that the police have been engaged in a campaign of harassment against plaintiffs, the other important goal of abstention—the avoidance of premature constitutional litigation—is likewise inapplicable to this case. For we have already recognized that a campaign of the type alleged by plaintiffs unduly interferes with the exercise of first amendment rights, and that Chapter 31 is a potentially significant weapon in that campaign.

■ In dismissing the complaint in this action, the court below relied heavily upon this court's decision in Belknap v. Leary, 427 F.2d 496 (2d Cir. 1970), but the case is clearly distinguishable on its facts. That decision concerned an attempt to "enjoin" the police of New York City from failing to protect anti-war demonstrators at upcoming protests. The injunction was sought because of the events of May 8, 1970, when construction workers assaulted demonstrators in downtown New York, generally free from police interference. This court vacated the injunction issued by the district court, partially on the grounds that there had been an outcry from official sources concerning the police failure, and that since the events of May 8 the police had competently handled two other major political demonstrations. 427 F.2d at 498–499. Unlike *Belknap*, there has been no official outcry against the alleged tactics of the Mount Vernon Police in this case. There is no allegation that strong public pressure has been brought to bear upon the police force to discontinue *its alleged actions*. The harassments were alleged to have continued through the end of January, 1970. Moreover, as indicated above, still further harassment and threats, during which time fifty copies of the Panther newspaper were

taken away and never returned, are alleged to have taken place in April, 1970. This action was brought in May, 1970. Though the court in *Belknap* may well have been correct in concluding that a problem no longer existed, there is no basis in the record for reaching a similar conclusion in this case, at least before an actual finding of fact is made. We see no reason, however, to reverse the denial of a preliminary injunction. The grant or denial of a motion for a preliminary injunction rests in the sound discretion of the trial court, and may be overturned only upon a showing of abuse of that discretion. See, e. g., County of Santa Barbara v. Hickel, 426 F.2d 164, 168 (9 Cir. 1970); Maas v. United States, 125 U.S.App.D.C. 251, 371 F.2d 348, 351 (1966). Here, since neither the level nor very existence of effective harassment is beyond question, we are unable to characterize the lower court's disposition of the motion for preliminary injunction as an abuse of discretion.

The judgment of the district court dismissing plaintiffs' complaint is reversed and the case remanded for further proceedings in accordance herewith. The denial of preliminary injunction is affirmed.