**CITIZENS FOR A BETTER ENVIRONMENT, INC., on behalf of itself and its employees, et al., Plaintiffs-Appellants,**

v.

**NASSAU COUNTY et al., Defendants-Appellees.**

**No. 238, Docket 73-2019.**

United States Court of Appeals, Second Circuit.

Argued Sept. 18, 1973.

Decided Nov. 14, 1973.

1354

Alexander B. Grannis, New York City (Berle, Butzel & Kass, New York City), for plaintiffs-appellants.

Natale C. Tedone, Deputy County Atty. (Joseph Jaspan, County Atty. of Nassau County, Biagio F. Giaquinto, Senior Deputy County Atty., Mineola, N. Y., of counsel), for defendants-appellees Nassau County and others.

John Capilli, Deputy Town Atty. (John F. O'Shaughnessy, Town Atty., Town of Hempstead, Francis T. Purcell, and others, as members of the Town Board and Governing Body of the Town of Hempstead, of counsel), for defendants-appellees Francis T. Purcell, and others.

Kenneth C. Butterfield, Town Atty., Town of Huntington, N. Y., for defendants-appellees Jerome A. Ambro, Thomas

J. Casey, Joseph A. Clemente, Richard V. Holahan and Leonard L. Horn, as the Members of the Town Board of the Town of Huntington.

Before SMITH, MULLIGAN and OAKES, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This appeal from denial of a motion for preliminary injunction in the United States District Court for the Eastern District of New York, Anthony J. Travia, *Judge*, involves the narrow issue of whether plaintiffs are entitled to a preliminary injunction to restrain the police departments of two Long Island counties from enforcing local solicitation ordinances against plaintiffs' door-to-door educational and fund-raising campaign. We stress this narrow scope, because while it is true that underlying this case is the always delicate balance between one man's right to express himself and another's right to be left alone, that troublesome issue is not presented in this appeal. Rather we are asked—as was the district court—to determine whether under state and local law the plaintiffs are completely exempt from local solicitation ordinances which even they concede to be fundamentally valid.[1] For a number of reasons, we agree that it would have been improper for the district court to have made that determination on motion for a preliminary injunction based on nothing more than the conflicting declarations of the parties. We affirm the denial of preliminary injunction.

Citizens for a Better Environment ("CBE") is a non-profit, tax-exempt organization registered as such with the Internal Revenue Service under § 501 of the Internal Revenue Code.[2] CBE

---

1. CBE has never contended that the local ordinances are so restrictive as to frustrate its right to conduct an educational, fund-raising campaign. CBE even concedes that it would be constitutional for the towns to eliminate the charitable exemption entirely and thus apply the ordinances to all solicitors—including CBE. *See also*, National Foundation v. City of Fort Worth, 415 F.2d 41 (5th Cir. 1969), cert. denied, 396 U.S. 1040, 90 S.Ct. 688, 24 L.Ed.2d 684 (1970) (upholding a municipal solicitation ordinance applied to charities.). CBE concedes the validity of *National Foundation*, but merely insists that since the town fathers saw fit to exempt charities in Long Island, CBE is immune as a matter of state and local—though *not* constitutional—law.

Alternatively, CBE argues that unless there is a necessary equation between the definitions of "charitable organization" in the federal tax code, state fraud laws, and local solicitation ordinances, the last of the three must be unconstitutionally vague. We reject this contention.

First, as discussed elsewhere in this opinion, neither the I.R.S. nor state officials has ever actually determined, on the basis of an independent inquiry, that CBE is in fact a "charitable organization." *See* text, pp. 1356–1358 & notes 2 and 6 *infra*. Indeed county officials have never contended that the definition in their local ordinances is different from that of state authorities; rather they argue that, as they understand the facts, CBE does not qualify as a charity under either definition.

Moreover, we do not believe that, despite the honest doubts about CBE's status, the term "charitable organization" is so imprecise or susceptible to arbitrary interpretation as to invoke the vagueness doctrine. *Compare*, Grayned v. City of Rockford, 408 U.S. 104, 108–114, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) *with* Papachristou v. City of Jacksonville, 405 U.S. 156, 158–171, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

2. Before the district court, counsel for CBE conceded that this tax-exempt determination did not include any finding that CBE was a charity. In fact, the form determination letter sent to CBE states only that, "Based on information supplied, and assuming your operations will be as stated in your application for recognition of exemption, we have determined you are exempt from Federal income tax under section 501(c)(3) of the Internal Revenue Code."

However, a "charitable" organization is only one of a number of different groups exempted by § 501(c)(3):

Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals.

. . . .

26 U.S.C. § 501(c)(3).

is also registered with the New York State Department of Social Services and the state Attorney General's Office pursuant to New York statutes regulating the activities of "charitable" organizations. However, it must be noted at the outset that such registration means only that the registrant *holds itself out as a charity*, since the broad statutory definition of "charitable organization" includes:

> Any benevolent, philanthropic, patriotic, or eleemosynary person *or one purporting to be such*.

New York Social Welfare Law, § 481, subd. 1 (1966) McKinney's Consol.Laws, c. 55 [emphasis added].

CBE's primary activity is sending its employees—a number of whom are individual plaintiffs in this action—door-to-door to talk with residents about environmental problems, distribute the organization's literature, and solicit contributions for CBE and other environmental groups. Plaintiffs note that in these solicitations, no employee has ever been charged with trespass, disturbing the peace, or a violation of any other law designed to protect life or property.[3]

But between January and May of 1973, at least twenty-six CBE employees were issued appearance tickets for violating local "Hawkers, Peddlers and Solicitors" ordinances in Nassau and Suffolk Counties.[4] Though the details of these ordinances vary slightly, they all require the licensing of those within their ambit and limit somewhat the time and scope of their solicitations.[5] However, the ordi-

---

Nowhere in the I.R.S. letter does the Service mention the term "charitable"; and, as the quoted portion of the I.R.S. letter shows, this "determination" did not involve any actual inquiry into the claims made by CBE in its request.

3. CBE does admit, however, that in the summer of 1972 the tactics of some of its solicitors provoked an investigation by the Charity Frauds Bureau of the State Attorney General's Office. On July 26, 1972, CBE and the Attorney General entered into an agreement, stating, *inter alia*:

> [B]ased upon this investigation [the Attorney General's Office] believes that Citizens for a Better Environment, Inc., has been engaged in improper, unreasonable and careless solicitation practices not in the public interest and which have interfered with and annoyed divers citizens of the State of New York and may be in violation of the Not-For-Profit Corporation Law, Sections 1101 and 1303, McKinney's Consol.Laws, c. 35, *as well as various local ordinances pertaining to solicotors (sic) and peddlers;* and . . . the Attorney General was about to commence an action against Citizens for a Better Environment, Inc., to enjoin the continuation of such acts and practices. . . . [emphasis added].

The parties further agreed that CBE would not

> (1) gain entry to private homes and properties for the purpose of soliciting funds in violation of the New York State Not-For-Profit Corporation Law, and local ordinances pertaining to peddling or soliciting, as these local ordinances affect not-for-profit organizations;
> (2) interfere with, annoy, harass or intimidate any member of the public in order to solicit funds for its corporate purposes;
> (3) use a request for signatures on a purported petition for environmental protection as a subterfuge to gain entry to private property for the purpose of soliciting funds for its corporate purposes, or any other subterfuge for the same purposes.

In a press release issued with the agreement, the Attorney General's Office reported that:

> Numerous complaints were received by the Attorney General's office to the effect that some of the organization's solicitors were demanding "contributions" of $3.

And the release again noted that such activity was in violation of local solicitation ordinances, as well as state fraud statutes.

4. The tickets, attached as exhibits to CBE's complaint, informed the solicitors that they had to appear in local county courts at times ranging from seven to thirty days after the date of their alleged violations. Apparently in one instance a solicitor refused to give his name to the "apprehending" officer and was, therefore, brought to the local station house. He was subsequently released after his identity was established.

5. The ordinance of the Town of Hempstead, where a number of the tickets were issued, is representative of its genre. In relevant part, it provides:

> § 118–1. Definitions.
> Solicit—Means to go from house to house, street to street, place to place or from

store to store, to sell or take orders for goods, wares, merchandise or provisions for future delivery, or for services to be performed, or for information to be obtained, or to distribute advertising matter, at any place within the Town of Hempstead other than that from a fixed place of business.

§ 118–2. License required.

It shall be unlawful for any person or company to peddle or solicit within the Town of Hempstead without having first obtained a valid license therefor as provided herein.

§ 118–3. Application.

Applicants for a license under this chapter must file with the Town Clerk an application in the form of a sworn affidavit in duplicate on a form to be supplied by the Town Clerk, which shall give the following information:

A. Name and description of applicant.

B. Address of applicant (local and legal).

C. A brief description of the nature of the business and the kind of goods or property to be peddled or solicited.

D. A statement as to whether or not the applicant has ever been convicted of any crime, misdemeanor or violation of any municipal ordinance, the nature of the offense and the punishment or penalty assessed therefor.

E. Three (3) photographs of the applicant taken not more than sixty (60) days prior to the date of filing of the application, which pictures shall be not larger than one and one-half by one and one-half (1½ x 1½) inches showing the head and shoulders of the applicant in a clear and distinguishing manner.

F. Statement that the applicant is a citizen and whether citizenship was obtained by birth or naturalization. If by naturalization, date and place where obtained.

G. If employed, the name and address of such employer, together with credentials establishing the exact relationship.

H. If for a vehicle license, a description of the vehicle, together with license number or other means of identification.

I. If applicant is a company, name and address and title of officer of company upon whom process or other legal notice may be served.

§ 118–4. Investigation and issuance.

A. Upon receipt of such application, one (1) copy shall be referred to the Nassau County Police Department for such investigation of the applicant to be made as it deems necessary for the protection of the public good.

B. If such investigation should prove the applicant to have a police record, the Police Department shall attach to such application a copy of the applicant's police record, and shall return the application to the Town Clerk.

§ 118–5. Fees.

The following fees shall be paid by the applicant at the time that the application for a license is submitted to the Town Clerk:

A. For each person proposing to peddle or solicit, whether on foot or from a licensed vehicle, five dollars ($5.)

§ 118–9. Use of streets.

No peddler or solicitor shall have any exclusive right to any location in the public streets, nor shall any peddler or solicitor be permitted to sell wares within two hundred (200) feet of a school between the hours of 8:00 a. m. and 4:00 p. m. on a school day, nor shall he be permitted to stand in one (1) place for more than fifteen (15) minutes, nor shall he be permitted to stop within two hundred (200) feet of a previous stop, nor shall he be permitted to operate in any congested area where his operation might impede or inconvenience the public. For the purpose of this chapter the judgment of any police officer, exercised in good faith, shall be deemed conclusive as to whether the area is congested or the public impeded or inconvenienced.

§ 118–10. Prohibition.

A. It shall be unlawful for any person to enter upon private property for the purpose of peddling or soliciting, except upon the invitation of the owner or occupant. (Amended 6–13–72 by L.L. No. 62–1972, effective 6–19–72)

§ 118–13. Exemption.

This chapter will not apply to religious, charitable or veteran organizations, or the distribution of a printed paper which is distributed, at stated intervals, to convey news.

§ 118–16. Revocation of license.

A. Licenses issued under the provisions of this chapter may be revoked by the Town Clerk of the Town of Hempstead after notice and hearing for any of the following causes:

(1) Fraud, misrepresentation or false statement contained in the application for license.

(2) Fraud, misrepresentation or false statement made in the course of carrying on his business as peddler or solicitor.

(3) Any violation of this chapter.

(4) Conviction of any crime or misdemeanor involving moral turpitude.

(5) Conducting the business of peddling in an unlawful manner or in such a manner as to constitute a breach of the peace or to constitute a menace to the health, safety or general welfare of the public.

nances also uniformly exempt "charitable" organizations, and it is, therefore, on the interpretation of such exemptions that this case will ultimately turn.

CBE contends that its non-profit nature, together with its registration under the state solicitation statutes, demonstrates conclusively that it is so exempt. The county officials counter that the state registration proves only that CBE has declared itself a "charitable organization" to state authorities who, while registering CBE, have carefully declined to put their imprimatur on it as a true "charity." [6] The officials further argue that the fact that CBE raises funds for other environmental groups makes it a "professional fund raiser," and not a charity, under the same state law: [7]

*Professional fund raiser.* Any person who for compensation or other consideration plans, conducts, manages, or carries on any drive or campaign in this state for the purpose of soliciting contributions for or on behalf of any charitable organization

or any other person, or who engages in the business of, or holds himself out to persons in this state as independently engaged in the business of soliciting contributions for such purpose. A bona fide officer or employee of a charitable organization shall not be deemed a professional fund raiser. New York Social Welfare Law § 482–e (1), McKinney's Consol.Laws c. 55.

Finally, they argue that the fact that CBE allows its employees to keep twenty-five percent of all they solicit, makes the individual plaintiff-employees "solicitors" who must also register with the state: [8]

*Solicitor.*

Any person who is employed or retained for compensation by a professional fund raiser to solicit contributions for charitable purposes from persons in this state. New York Social Welfare Law § 482–e (2); see § 482–h, McKinney's Consol. Laws c. 55.

---

§ 118–17. Appeal.

Any person aggrieved by the action of the Town Clerk in the denial of an application for a license as provided in § 118–4 of this chapter, or in the decision of the Town Clerk with reference to the revocation of a license as provided in § 118–16 of this chapter, shall have the right to appeal to the Town Board of the Town of Hempstead. . . .

§ 118–18. Penalties for offenses.

Any person or persons, association or corporation committing an offense against this chapter, or any section or provision thereof, is guilty of a violation punishable by a fine not exceeding two hundred fifty dollars ($250.) or imprisonment for a period not exceeding fifteen (15) days for each such offense, or by both such fine and imprisonment.

6. On April 9, 1973, CBE received confirmation from the State Board of Social Welfare that it was registered as a "charitable organization" under the state solicitation laws. However, the letter further stated:

. . . [W]e wish to inform you that this Bureau does not give any opinions as to merits, finances or any other qualification regarding a charitable organization. In his opposing affidavit, James Ketcham,

Deputy Police Commissioner of Nassau County, stated that he had been informed, in the spring of 1973, that CBE had been declared "non-charitable" and been denied permission to solicit by the New York City Department of Social Services, *and* that CBE's status was again under investigation by the state Attorney General's Office. Counsel for CBE denied both charges.

7. In his affidavit, Deputy Commissioner Ketcham stated that Mr. Beren, CBE's president, had informed him that, including the 25% retained by the solicitor and the 5% given to his supervisor, approximately 65% of the total contributions was retained by CBE for its own expenses. The remaining 35% was passed on to other environmental groups.

CBE's literature squares with this breakdown, save that it further informs contributors that the one-third retained by CBE after solicitation expenses supported a free speaker's bureau, the organization's newsletter, and a staff of environmental lawyers and investigators.

8. CBE's literature states that their solicitors —the majority of whom are college students apparently working part time—average $75 a week. In his affidavit, CBE's former attorney stated that no solicitor ever made more than $150 a week.

Following the ticketing of its employees, CBE and the ticketed individuals instituted this action under the Civil Rights Act, 42 U.S.C. § 1983, claiming the deprivation of various constitutional rights and asking for both damages and injunctive relief from the alleged campaign of police harassment.[9] On June 22, 1973, the district court heard plaintiffs' motion for a preliminary injunction. Unfortunately, neither side was prepared to present any evidence to support their conflicting affidavits concerning CBE's activities and status. After hearing argument, the district judge denied the motion, stating that the papers and affidavits convinced him that there were serious questions concerning CBE's status that should be resolved initially in the state courts. However, the district court retained jurisdiction over all other elements of the case. Appellants are, therefore, appealing only the denial of the preliminary injunction.

## I. The Denial of Relief for the Individual Plaintiffs

■ The initial contention of the county officials that the anti-injunction provision in 28 U.S.C. § 2283 operates as a complete bar to any injunctive relief in this case is clearly incorrect.[10] In Mitchum v. Foster, 407 U.S. 225, 242–243 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), the Supreme Court clearly held that the Civil Rights Act is within the "expressly authorized by Act of Congress" exception to § 2283, and that, therefore, in such cases injunctive relief may be granted even to the extent of enjoining state court proceedings. But as the *Mitchum* Court immediately cautioned, this is not to say that a § 1983 action is in any sense exempt from the normal rules of federal abstention and deference to the state courts:

> [W]e do not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding. These principles, in the context of state criminal prosecutions, were canvassed at length last Term in Younger v. Harris, 401 U.S. 37 [91 S.Ct. 746, 27 L.Ed.2d 669], and its companion cases. They are principles that have been emphasized by this Court many times in the past. Fenner v. Boykin, 271 U.S. 240 [46 S.Ct. 492, 70 L.Ed. 927]; Spielman Motor Sales Co. v. Dodge, 295 U.S. 89 [55 S.Ct. 678, 79 L.Ed. 1322]; Beal v. Missouri Pac. R. Co., 312 U.S. 45 [61 S.Ct. 418, 85 L.Ed. 577]; Watson v. Buck, 313 U.S. 387 [61 S.Ct. 962, 85 L.Ed. 1416]; Williams v. Miller, 317 U.S. 599 [63 S.Ct. 258, 87 L.Ed. 489]; Douglas v. City of Jeannette, 319 U.S. 157 [63 S.Ct. 877, 87 L.Ed. 1324]; Stefanelli v. Minard, 342 U.S. 117 [72 S.Ct. 118, 96 L.Ed. 138]; Cameron v. Johnson, 390 U.S. 611 [88 S.Ct. 1335, 20 L.Ed.2d 182].

*Id.* at 243, 92 S.Ct. at 2162. *See also,* 407 U.S. 243–244, 92 S.Ct. 2151 (Burger, C. J., concurring).

Thus, to the extent the individual plaintiffs are seeking to enjoin the criminal actions pending against them, *Younger* must control. There, the Court reviewed a number of its prior decisions in holding that where a federal court is asked to enjoin state criminal proceedings, "even irreparable injury is insufficient unless it is both 'great and immediate.'" 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971).

---

9. CBE and the individual plaintiffs asked for damages of $100,000 for the deprivation of their constitutional rights, $30,000 for lost contributions, and $25,000 in exemplary damages.

10. 28 U.S.C. § 2283. Stay of State court proceedings.

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

Appellants seek to avoid *Younger* and its companion cases,[11] by comparing this case to Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), the most notable exception to the *Younger* philosophy of federal restraint. But as summarized in *Younger, Dombrowski* involved an extraordinary set of circumstances:

> The appellants in *Dombrowski* had offered to prove that their offices had been raided and all their files and records seized pursuant to search and arrest warrants that were later summarily vacated by a state judge for lack of probable cause. They also offered to prove that despite the state court order quashing the warrants and suppressing the evidence seized, the prosecutor was continuing to threaten to initiate new prosecutions of appellants under the same statutes, was holding public hearings at which photostatic copies of the illegally seized documents were being used, and was threatening to use other copies of the illegally seized documents to obtain grand jury indictments against the appellants on charges of violating the same statutes.

401 U.S. 37, 48, 91 S.Ct. 746, 752, 27 L.Ed.2d 669 (1971). *See also,* Dombrowski v. Pfister, 380 U.S. 479, 487–488, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

While the plaintiffs here have alleged police harassment, they have not suggested, and certainly have not proven, any of the specific harassing tactics involved in *Dombrowski*. As only one important point of distinction, where in *Dombrowski* the state courts had previously rejected the prosecutor's sham case, here they have had no opportunity to consider the real questions about CBE's status under state and local law. In this regard, it must be remembered that the plaintiffs challenge only the application, and not the fundamental validity, of the local ordinances.

Nor has CBE suggested any motive for this alleged campaign of police harassment—unless we are to believe that, as a general rule, environmentalists in 1973 Long Island are as feared and despised as were civil rights activists in 1963 Louisiana. In short, we believe the conflicting affidavits before the district court hardly demonstrate the bad faith harassment necessary to enjoin a pending state criminal action.

Finally, we wish to note in this regard that both this court and the district court have been assured that the individual plaintiffs will be tried in the immediate future and that whatever delay has occurred thus far has been due to the mutual agreement of the parties to litigate this issue in the federal courts. We trust that now that we have made it clear that the question of CBE's status belongs, at least initially, in the state courts, these rather routine cases will be tried as soon as possible. Should county officials delay in providing such a speedy resolution of the key issue in this case, the plaintiffs would, of course, be free to return to the district court for injunctive relief against what might then appear to be purely harassment prosecutions. *See* Broughton v. Brewer, 298 F.Supp. 260, 264, 266–267 (S.D.-N.D.Ala. 1969) (three-judge court).

## II. The Denial of Relief as to CBE

CBE argues that *Younger* bars injunctions only where the complaining party is an actual defendant in a pending criminal prosecution, and that since CBE itself is not such a defendant, the district court improperly denied *its* motion for an injunction protecting its solicitors from future police action. We find this distinction persuasive, but not dispositive.

It is, of course, true that *Younger,* is directed toward those actually involved in a criminal proceeding. Indeed the first section of the Court's opinion is

---

11. Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed. 2d 781 (1971); Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971).

devoted to excluding from the remainder of the decision those plaintiffs who had not been indicted or threatened with criminal prosecution. Younger v. Harris, 401 U.S. 37, 41–42, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). However, the Court was careful to note that:

> If these three [plaintiffs] had alleged that they would be prosecuted for the conduct they planned to engage in, and if the District Court had found this allegation to be true—either on the admission of the State's district attorney or on any other evidence—then a genuine controversy might be said to exist.

*Id.* at 42, 91 S.Ct. at 749.

■ CBE clearly meets this standard, for while it has not been charged with any offense, its very existence as a soliciting organization is obviously threatened by the fact that the police intend to continue to invoke the solicitation ordinances against its employees. This does not, of course, mean that CBE can seek to enjoin the individual cases already pending. It would be bizarre, and a clear frustration of *Younger*, to hold that a federal court can enjoin a valid state criminal prosecution merely because the case is of importance to some non-indicted third party.[12]

But CBE's real interest in the proper application of the local solicitation ordinances does entitle it to seek injunctive relief against *future* police action against it or its solicitors. *See* Thoms v. Heffernan, 473 F.2d 478, 482–483 (2d Cir. 1973), petition for cert. filed April 9, 1973, 42 U.S.L.W. 3019 (1973). *See also*, Lake Carriers' Association v. Mac-Mullan, 406 U.S. 498, 509, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); Younger v. Har-

ris, 401 U.S. 37, 55, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (Stewart and Harlan, *JJ.*, concurring).

In so holding we recognize, as did the court in *Thoms*, that the class of plaintiffs with a justiciable interest in the enforcement of a criminal statute, who are not also defendants in a criminal proceeding, is exceedingly narrow. *See* Thoms v. Heffernan, *supra*, at 483–485 of 473 F.2d. However we believe the Court in *Younger* did intend to preserve injunctive relief for such a narrowly defined class, and that CBE is within it. *See* Younger v. Harris, 401 U.S. 37, 42, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *Cf.* Lewis v. Kugler, 446 F.2d 1343, 1349 (3d Cir. 1971).

■ However, while CBE is thus entitled to *seek* a preliminary injunction against future enforcement of the solicitation ordinances, we must agree with the district court that the organization failed to show it was entitled to one. It must be remembered that, even apart from the special requirements of *Younger*, such preliminary relief is within the equitable discretion of the trial court, and that it requires a showing of both a likelihood of prevailing on the merits and irreparable injury that can be avoided only by the court's immediate intervention. Brown v. Chote, 411 U.S. 452, 454–457, 93 S.Ct. 1732, 36 L.Ed.2d 420 (1973); Berrigan v. Norton, 451 F.2d 790, 793 (2d Cir. 1971); Katz v. McAulay, 438 F.2d 1058, 1060 (2d Cir. 1971), cert. denied, 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972); 7 J. Moore, Federal Practice ¶ 65.04[1–2] (2d ed. 1966). Here the conflicting affidavits before the district court failed to satisfy either burden.[13]

---

12. Conversely, in differentiating between the claims of CBE and the individual plaintiffs, we are not unmindful of the problem that would face the district court in separating the two groups for purposes of injunctive relief.

Since we find that CBE is not entitled to *any* injunctive relief at this time, we need not pursue this question further. We note it, however, to suggest the danger of bringing a joint action with already indicted in-

dividuals. *See*, Note, Implications of the Younger Cases for the Applicability of Federal Equitable Relief When No State Prosecution is Pending, 72 Colum.L.R. 874, 896 n. 140 (1972). This problem of severability is yet another factor suggesting that the district court was justified in staying its hand until the original state cases against the individuals had been decided.

13. Appellants' reliance on our decision in Hull v. Petrillo, 439 F.2d 1184 (2d Cir.

First, at the risk of becoming repetitious, it must again be noted that CBE does not question the validity of the local ordinances. This is not, therefore, an action challenging a statute or ordinance as facially invalid under the First Amendment—the type of case where abstention by a federal court has rightly been held to be unwarranted and unwise. *See* Zwickler v. Koota, 389 U.S. 241, 248–252, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Dombrowski v. Pfister, 380 U.S. 479, 483–485, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1964); Thoms v. Heffernan, 473 F.2d 478, 486 (2d Cir. 1973), petition for cert. filed April 9, 1973, 42 U.S.L.W. 3019 (1973); Long Island Moratorium Committee v. Cahn, 437 F.2d 344, 345–350 (2d Cir. 1970). Rather it is one involving the application and interpretation of concededly valid state and local laws—the type of case where abstention is certainly prudent if not mandated. *See* Askew v. Hargrave, 401 U.S. 476, 477–478, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971); Reetz v. Bozanich, 397 U.S. 82, 86–87, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Harman v. Forssenius, 380 U.S. 528, 534–535, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); Russo v. Kirby, 453 F.2d 548, 552 (2d Cir. 1971); Reid v. Board of Education of City of New York, 453 F.2d 238, 241–243 (2d Cir. 1971).

Here the issues of state and local law, while perhaps not complex, are open to honest doubt. Most notably there are still serious questions concerning the nature of CBE's campaign and the import of its registration as a charitable organization under state law. Rather than attempt to resolve these issues in an evidentiary hearing, CBE rested its motion for preliminary relief on the conflicting affidavits and declarations of CBE and county officials. Given that these same issues were soon to be tried in the state courts, we can hardly say the district judge abused his discretion in denying this motion for a preliminary injunction.

Similarly, while CBE claimed that it was being irreparably injured by the local prosecutions and that only a federal injunction could save its operation, it failed to meet its heavy burden on the question of irreparable harm. Rather the court was again faced with conflicting affidavits as to CBE's attempt to comply with the local ordinances—a course of action that would have allowed CBE to continue its solicitation campaign while still litigating its right to be exempt from the ordinances completely.[14]

---

1971)—a case strikingly similar to the one at bar—is notably misplaced. In *Hull* members of the Black Panther Party sought injunctive relief against police officials who had allegedly threatened to invoke similar solicitation ordinances against members selling the organization's newspaper. But while in *Hull* we reversed the district court's judgment to the extent that it dismissed plaintiff's complaint *entirely*, we affirmed the court's denial of a preliminary injunction prior to a factual hearing on the alleged police harassment:

> We see no reason, however, to reverse the denial of a preliminary injunction. The grant or denial of a motion for a preliminary injunction rests in the sound discretion of the trial court, and may be overturned only upon a showing of abuse of that discretion. . . .

*Id.* at 1189.

This result is particularly noteworthy, since in *Hull* there was "no doubt" that if the ordinance was construed as applying to plaintiffs' conduct it would be unconstitutional, and yet there were no pending prosecutions in which the party members could test either their statutory or constitutional defenses. *Id.* at 1185–1186, 1186–1187, n. 1.

14. Both CBE President Beren and Deputy Commissioner Ketcham state that *before* the federal action was instituted, they had agreed that, pending a conclusive determination of CBE's status, CBE would register, and continue to conducts its campaign, under the local ordinances. Mr. Beren, however, states that when he went to register at the Hempstead clerk's office, he was turned away with the argument that since CBE was a charity, no license could be issued.

Before the district court, counsel for the county offered an affidavit by a Mr. O'Rourke, apparently an official in a clerk's office (not part of the record on appeal), stating that the real reason for the refusal was the cloud over the organization's legitimacy raised by the on-going investigation of

In sum, we find that by failing to demonstrate either a clear likelihood of ultimately prevailing on the merits or of unavoidable and irreparable injury, CBE failed to meet the heavy burden imposed on any plaintiff seeking a preliminary injunction. That burden obviously becomes all the greater when the critical unresolved questions involve interpretations of state and local law which will soon be before the state courts.

This is not, of course, to suggest that CBE's position may not ultimately prevail in the state or federal actions. We assume that the state courts will soon render judgments in the cases of the individual solicitors, and that the district court will proceed with all deliberate speed to try the plaintiffs' civil rights action. Should the district court find that plaintiffs have in fact been denied their civil rights by arbitrary police action, then damages and permanent injunctive relief would properly be in order. But we cannot say that faced with an array of conflicting, self-serving affidavits, the district court abused its discretion in denying preliminary relief.

The denial of preliminary injunction is affirmed.

MULLIGAN, Circuit Judge (concurring):

I agree with the result reached by the majority here and concur separately only because I disagree with the dicta that CBE has standing to enjoin future police action against it or its solicitors. There is no threat by the defendants here to bring any criminal prosecutions

against CBE. The only harm being suffered by CBE results from the activities of its solicitors. The local police and agencies who were joined here as defendants, while they do have an interest in protecting their citizens from the harassment of unlicensed solicitation, do not have any jurisdiction over or direct interest in the bona fides of CBE's status as a charitable corporation. This is the responsibility of the Attorney General of the State of New York or the Internal Revenue Service, neither of which is a party here and neither of which has apparently threatened any action against CBE. Justiciability not only involves the requirement that the plaintiff have some interest threatened but that the defendant should have an interest or responsibility to controvert it. See Holtzman v. Schlesinger, 484 F.2d 1307, 1315 (2d Cir. 1973). Hence, while Thoms v. Heffernan, 473 F.2d 478 (2d Cir. 1973) would support an action by other solicitors who are threatened precisely as those individual plaintiffs here are, I would not extend it to include the corporate entity whose status is properly the concern of State and Federal agencies not joined as defendants.

The Fifth Circuit reached a result contrary to *Thoms* in Becker v. Thompson, 459 F.2d 919, rehearing and rehearing *en banc* denied, 463 F.2d 1338 (1972) and the Supreme Court has granted certiorari (410 U.S. 953, 93 S.Ct. 1424, 35 L.Ed.2d 686 (1973)) to consider the case.

Perhaps the Court's opinion there will cast light upon this question, which is hardly as clear as a mountain lake in springtime.

---

its methods. Counsel further noted that CBE had never challenged the denial of their registration request, as is allowed under the Hempstead code.

It was also noted that nowhere in its moving papers or affidavits had CBE alleged that it had made similar applications, successive or otherwise, to towns other than

Hempstead. In his affidavit, Deputy Commissioner Ketcham suggested that one possible explanation for CBE's failure to press for local registration was that, as its president admitted to Commissioner Ketcham, some of CBE's solicitors have criminal records. Under the local ordinances, such individuals would be ineligible for registration.