646 F.2d 1087
 Alfred "Skip" ROBINSON, President of the United League of
Mississippi, and Donald Pack, President of the
United League of Chickasaw County, the
United League of Mississippi,
Plaintiffs-Appellants,
v.
Richard STOVALL, Mayor of Okolona, Mississippi, et al.,
Defendants-Appellees.
 No. 79-2588.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit A
 June 5, 1981.
 Alvin O. Chambliss, Leonard McClellan, Oxford, Miss., for plaintiffs-appellants.
 John Sibley, Kenneth M. Burns, Okolona, Miss., George C. Cochran, for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Mississippi.
 Before WISDOM, POLITZ and SAM D. JOHNSON, Circuit Judges.
 WISDOM, Circuit Judge:
 
 
 1
 The issue in this case is whether the district court erred in dismissing this civil rights suit under the doctrine of equitable restraint announced in Younger v. Harris, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, and developed by its progeny. We hold that the dismissal was improper. We remand the case to allow the plaintiffs to pursue their suit. We affirm certain holdings of the district court.
 
 
 2
 This suit arises out of racial unrest in Okolona, Mississippi. Okolona is a town of approximately 3,000 persons. Its police department consists of a chief and five patrolmen, three blacks and two whites. During the summer of 1978, the members and supporters of the United League of Mississippi, a black civil rights organization, began a series of marches and rallies in Okolona, protesting alleged local racial discrimination and unfair law enforcement by the Okolona police. Hostile white groups, including robed members of the Ku Klux Klan and members of the White Citizens Council, staged marches of their own. Activists from both groups made inflammatory speeches and committed acts of violence; shots were fired into homes and cars. The citizens of Okolona had reason to fear the possibility of a confrontation that could not be controlled. To avoid the risk of riotous demonstrations, the Okolona Board of Aldermen adopted an ordinance on September 19, 1978, regulating public marches in the city. The ordinance requires that persons wishing to march must first obtain a permit from the city marshal, specifying a particular route and time. It establishes rules for marchers' conduct, including a mandatory interval of one yard between participants. The plaintiffs object to this provision on the ground that marching hand in hand is a traditional symbol of unity. More importantly, the ordinance requires that the marchers assemble and commence the march within thirty minutes of the scheduled starting time. The plaintiffs contend that this provision operates as a prior restraint, making marches impossible; a march cannot be marshalled in thirty minutes. The ordinance sets out criminal penalties for any violation of its provisions.
 
 
 3
 After the ordinance was adopted there were no further marches by white groups. The United League obtained permits and staged several marches without incident. The League did not comply with the thirty-minute time rule, but the police overlooked this infraction. On April 13, 1979, however, city authorities notified the League's leaders that thenceforth the entire ordinance would be enforced strictly. On April 14, while League members and supporters were assembling for a scheduled march, police informed them that their permit was invalid because the march had not started within thirty minutes. Nevertheless, the march proceeded. The police arrested 114 participants for marching without a valid permit.
 
 
 4
 On April 20, 1979, the plaintiffs filed this suit against several city officials as a class action under 42 U.S.C. § 1983 (1976). The complaint alleged that the Okolona ordinance is an unconstitutional restriction on the plaintiffs' first amendment rights and that the police and other city officials conspired to deprive the plaintiffs of their right to march by means of arrests, physical assaults, and other acts of harassment and intimidation. The prayer requested a declaration that the parade ordinance is unconstitutional; an injunction against any further arrests, harassment, or other interference with the plaintiffs' exercise of their first amendment rights; preliminary relief; and damages, fees, and costs.
 
 
 5
 On April 27, the district court entered a temporary restraining order against enforcement of the thirty-minute provision, in favor of "members of the plaintiff class who have not been arrested nor face criminal prosecution" (emphasis added). The League applied for a marching permit for the following day, April 28. The city marshal testified that he offered the League a permit, but the League refused it because it did not grant permission to halt the parade on Main Street. This street is three blocks long and 80 feet wide, has the City Hall and the Library fronting on is, and is the principal commercial street. The march was held; 176 persons were arrested.
 
 
 6
 On April 30, the district court ordered the plaintiffs to file a substitute complaint, "in the name of representative plaintiffs who are black citizens residing in Okolona, Mississippi, who were not arrested on April 14, 1979, and subject to criminal prosecution in the Okolona City Court for violation of the Okolona parade ordinance" (emphasis added). The order also required the plaintiffs to "redefine the class as all members of the black race residing in Okolona who are members of the United League of Mississippi and who were not arrested on said occasion for violation of the Okolona parade ordinance". The court stated: "Said substitution is required in order to remove any question of standing of black citizens aggrieved by the constitutionality of the Okolona parade ordinance who have not been arrested on charges of violating the Okolona parade ordinance and are not confronted with criminal proceedings in the Okolona City Court as a result thereof, on the authority of Younger v. Harris, 401 U.S. 37 (91 S.Ct. 746, 27 L.Ed.2d 669) (1971); Huffman v. Pursue, Ltd., 420 U.S. 592 (95 S.Ct. 1200, 43 L.Ed.2d 482) (1975); Hicks v. Miranda, 422 U.S. 332 (95 S.Ct. 2281, 45 L.Ed.2d 223) (1975); and Doran v. Salem Inn, Inc., 422 U.S. 922 (95 S.Ct. 2561, 45 L.Ed.2d 648) (1975)."
 
 
 7
 The substitute complaint, filed four days later, repleaded the original complaint's allegations and added new allegations concerning the events of April 28. It also added a third cause of action, asserting alleged acts of police brutality on April 14 and 28 as independent constitutional violations. The new complaint separated the plaintiff class into four subclasses:
 
 
 8
 Subclass IA, class members who have never been arrested under the Okolona parade ordinance;
 
 
 9
 Subclass IB, class members arrested on April 28 (including some also arrested on April 14);
 
 
 10
 Subclass IC, class members arrested on April 14; and
 
 
 11
 Subclass II, class members (whether members of any of the other subclasses or not) who suffered physical brutality or whose property was illegally seized in connection with either of the April marches.
 
 
 12
 The district court was quick to notice that the substitute complaint violated the order of April 30 in not redefining the class as those members and supporters of the United League who had not been arrested. Subclass IB and IC included those who were, respectively, arrested on April 28 and April 14 (with some overlap). By order dated May 4, 1979, the court dismissed from the suit members of subclass IC "for lack of standing". The court ruled that the "joinder" of subclass b (IB) was "not within the purview of our prior temporary restraining order and no relief is presently grantable to persons in subclass b". The court reiterated that the persons entitled to continuing injunctive relief are the members and supporters of the United League who had not been arrested for violations of the ordinance.
 
 
 13
 The plaintiffs did not appeal from that order.
 
 
 14
 Evidentiary hearings on the plaintiffs' motion for a preliminary injunction were conducted on June 1 and June 12, 1979. By agreement of the parties, the hearing was treated as a final hearing under Fed.R.Civ.P. 65(a)(2). On June 20 the district court held that the Younger doctrine barred the plaintiffs' suit and dismissed the action without prejudice. 473 F.Supp. 135 (N.D.Miss.1979). It found that "federal relief of any kind to the plaintiff arrestees would be an unwarranted intrusion into the prerogatives and authority of Mississippi's state judicial system " 473 F.Supp. at 147. The rationale of the decision was that the interests of the plaintiffs who were not arrested were so "intertwined" with those of the plaintiffs who were arrested that Younger bars relief as to any of the alleged plaintiff subclasses.
 
 Police Brutality
 
 15
 We tarry for a moment to dispose of the plaintiffs-appellants' contention that the Okolona police used excessive force in making the arrests. The plaintiffs' objective in making these allegations is unclear. It could have been the basis for an independent cause of action under 42 U.S.C. § 1983. Or, as the trial judge thought, it could have been an effort to show a pattern or practice of police brutality constituting "bad faith harassment on the part of the defendants, (that is,) extraordinary circumstances sufficient to remove the Younger barrier". The trial judge weighed the conflicting evidence and found "as a fact that no such excessive use of force was utilized by law enforcement officers". He "resolve(d) this disputed issue against plaintiffs". On the record, we cannot say that this finding was clearly erroneous, and that holding must be affirmed.
 
 Persons Never Arrested Under the Ordinance
 
 16
 The district court concluded that Younger and its progeny bar "federal relief of any kind to the plaintiff arrestees". But not all the plaintiffs in this suit are arrestees; there is an entire class, including named plaintiffs, who have never been arrested for marching in Okolona. We hold that the district court erred in concluding that Younger abstention closes the federal court to the non-arrested plaintiffs.
 
 
 17
 There is no room to doubt that, but for the collateral fact of pending prosecutions against their co-plaintiffs, the nonarrested plaintiffs of subclass IA would be entitled to bring this suit. There is no contention that these persons lack standing to challenge the constitutionality of the ordinance and the city's alleged conduct in arresting and harassing marchers. See generally Younger, 401 U.S. at 41-42, 91 S.Ct. at 749; Steffel v. Thompson, 1974, 415 U.S. 452, 458-60, 94 S.Ct. 1209, 1215-1216, 39 L.Ed.2d 505, 514-15; Morial v. Judiciary Commission, 5 Cir. 1977, 565 F.2d 295, 298-99 (en banc), cert. denied, 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978). A person threatened with, but not yet the subject of, an allegedly illegal arrest and prosecution or other violations of his federal rights may seek appropriate injunctive and declaratory relief without any obstacles from the Younger doctrine. Steffel, 415 U.S. at 461-62, 94 S.Ct. at 1216-1217; Doran v. Salem Inn, Inc., 1975, 422 U.S. 922, 930-31, 95 S.Ct. 2561, 2567-2568, 45 L.Ed.2d 648, 658-59; Wooley v. Maynard, 1977, 430 U.S. 705, 709-11, 97 S.Ct. 1428, 1432-1433, 51 L.Ed.2d 752, 759-60; Roe v. Wade, 1973, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147; Septum, Inc. v. Keller, 5 Cir. 1980, 614 F.2d 456, 460-61, cert. denied, -- U.S. --, 101 S.Ct. 527, 66 L.Ed.2d 288 (1980); Ealy v. Littlejohn, 5 Cir. 1978, 569 F.2d 219, 231-34; Citizens for a Better Environment, Inc. v. Nassau County, 2 Cir. 1973, 488 F.2d 1353, 1361.
 
 
 18
 Except in extraordinary circumstances, a civil rights plaintiff's ability to sue to vindicate his rights in federal court is not affected by the simultaneous pendency of a state prosecution against someone else (whether or not the state defendant is a litigant in a federal action). It is true that Younger ordinarily bars a federal suit that seeks directly to enjoin a state prosecution, no matter who is the federal plaintiff. See Citizens for a Better Environment, 488 F.2d at 1361. These plaintiffs seek no such thing. They seek only prospective relief an injunction against future arrests or harassment, and a declaratory judgment that the first amendment protects their right to stage further marches without complying with the parade ordinance. Such relief will affect the pending Okolona prosecutions, if at all, only through the operation of ordinary principles of collateral estoppel. The Supreme Court's decisions on point make it clear that such an attenuated impact cannot be the basis for Younger abstention. In Doran, for example, the plaintiffs were three bar operators challenging a local ordinance against topless dancing. One of the three was the subject of a pending prosecution for violating the ordinance; the other two had chosen to obey the ordinance while awaiting a court decision on its constitutionality. The first plaintiff, the Court held, was barred from suit by Younger. Nevertheless, the Court repudiated the suggestion that the other two should be derivatively precluded from suing because the first was barred. 422 U.S. at 928-29, 95 S.Ct. at 2566-2567. The Doran Court did not announce anything new; it explained in detail what it had implicitly approved before. In Steffel, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505, for example, the plaintiff was one of several persons ordered to stop distributing leaflets at a shopping center. The plaintiff complied, but one of his companions refused and was arrested. Steffel sought a declaratory judgment that he was entitled to distribute leaflets; if granted, that relief would have the incidental effect of halting the state prosecution of his colleague. Nevertheless, the Court found Younger abstention inapplicable. Similarly, in Roe v. Wade, 410 U.S. at 125-27, 93 S.Ct. at 712-713, the Court held that one plaintiff's suit was barred by Younger, but it proceeded to the merits of his co-plaintiff's identical claims. Accord, e. g., Diaz v. Stathis, 1 Cir. 1978, 576 F.2d 9; Grandco Corp. v. Rochford, 7 Cir. 1976, 536 F.2d 197, 205-07; La Bauve v. Louisiana Wildlife & Fisheries Commission, E.D.La.1978, 444 F.Supp. 1370, 1375-76 (3-judge court); Penthouse International, Ltd. v. McAuliffe, N.D.Ga.1977, 436 F.Supp. 1241, 1247-49, rev'd in part on other grounds, 610 F.2d 1353 (5 Cir.), cert. denied, 447 U.S. 931, 100 S.Ct. 3031, 65 L.Ed.2d 1131 (1980). As we said in Morial, "Younger principles are not invoked by the mere fact that federal relief has an impact upon state governmental machinery". 565 F.2d at 299. See also Concerned Citizens v. Sills, 5 Cir. 1978, 567 F.2d 646, 649 & n.4; 17 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4252, at 548-51 (1978).
 
 
 19
 The district court found that the arrested and non-arrested plaintiffs' interests were so "intertwined" as to be lumped together for Younger purposes. The Supreme Court addressed the problem in Doran:
 
 
 20
 While there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the Younger considerations which govern any one of them, this not such a case while respondents are represented by common counsel, and have similar business activities and problems, they are apparently unrelated in terms of ownership, control, and management.
 
 
 21
 422 U.S. at 928-29, 95 S.Ct. at 2566-67. In this case, the district court found "intertwining" because the named plaintiffs were all leaders of the United League; the plaintiff class members were all members or supporters of the League; and all are represented by common counsel.[1]
 
 
 22
 We do not agree that the non-arrested plaintiffs fall under the same burden of Younger abstention as their arrested colleagues. As Doran recognized, neither a common interest in the outcome of federal litigation nor a common effort in pressing it requires abstention as to all plaintiffs. Nor are we persuaded that all the plaintiffs fall into the same hopper because they have exercised their constitutional right to associate and act collectively to press their political and social grievances outside the court. See, e. g., NAACP v. Alabama ex rel. Patterson, 1958, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488. In Steffel, for example, a group of protestors acted in concert to distribute leaflets opposing the Vietnam war. Although one of their group was under prosecution, the Court held that another member could bring a federal action to declare his right to engage in identical conduct. Again, in Cobb v. Beame, S.D.N.Y. 1975, 402 F.Supp. 19, the federal plaintiffs and the state criminal defendants were all active members of the U. S. Labor Party. In that case the court said:
 
 
 23
 The Corporation Counsel urges this Court to apply the Doran principle and to decide that this is precisely the type of case where legally distinct individuals are to all be bound by the same Younger considerations which apply to any one of them. In the context of political speech and assembly, in the face of this city ordinance, and in light of the fundamental fact that neither of the plaintiffs herein have been sued in state court, this Court refuses to conclude that the Supreme Court opinion in Doran envisioned this type of situation. If this Court were to adopt the expansive reading of the Hicks holding and the Doran dicta urged by the Corporation Counsel, then a City could foreclose totally any federal constitutional challenge to an ordinance such as this one merely by prosecuting one individual among the many at whom the ordinance was directed. This result truly "would turn federalism on its head" and would impose an exhaustion requirement upon § 1983 actions, which the Supreme Court has refused to do. Further, it would constitute an abrogation of the paramount duty of the federal courts to protect constitutional rights.
 
 
 24
 402 F.Supp. at 25 (citations omitted).
 
 
 25
 Here, the case for abstention is even weaker. Instead of a close group of activists, this case presents a loose organization of several hundred members and an unknown number of "supporters" persons, in fact, who manifest their support of the United League mainly or solely through their participation in the very marches that form the subject matter of this suit. Especially where political expression is in jeopardy, the federal courts cannot allow local officers to delay or defeat the vindication of the asserted constitutional rights of a whole class of citizens by the easy device of arresting and prosecuting a portion of them. "(O)ne of the strengths of our federal system is that it provides a double source of protection for the rights of our citizens. Federalism is not served when the federal half of that protection is crippled." Brennan, State Constitutions and the Protection of Individual Rights, 90 Harv.L.Rev. 489, 503 (1977).
 
 
 26
 On only one occasion has the Supreme Court found legally separate parties sufficiently intertwined to be considered as one for Younger purposes. Hicks v. Miranda, 1975, 422 U.S. 322, 348-49, 95 S.Ct. 2281, 2291-2292, 45 L.Ed.2d 223, 238-39 (alternative holding). The federal plaintiffs and state defendants in Hicks had much closer mutual interests than common membership in, or support of, a large political organization: they were the owners and employees of the same small business.[2] Moreover, the Hicks holding rested on the fact that the owners (the federal plaintiffs) could vindicate their rights by seeking the return of their seized property in the pending state prosecutions of their employees. 422 U.S. at 349, 95 S.Ct. at 2291. When this crucial element availability of intervention in the state proceedings is absent, the courts have not hesitated to reject an "intertwining" theory, even in cases involving co-employees or employees and employers. E. g., Citizens for a Better Environment, 488 F.2d at 1360-61; Kew v. Senter, N.D.Tex. 1976, 416 F.Supp. 1101 (3-judge court); Graham v. Hill, W.D.Tex. 1978, 444 F.Supp. 584. There is no suggestion in this case that the non-arrested plaintiffs could somehow interject themselves into the pending criminal proceedings;[3] if they were shut out of federal court their only recourse would be to bring an identical civil rights suit in state civil court. In such circumstances, "principles of federalism not only do not preclude federal intervention, they compel it". Steffel, 415 U.S. at 472, 94 S.Ct. at 1222; Septum, 614 F.2d at 460-61.
 
 
 27
 The district court's judgment dismissing this suit on Younger grounds is AFFIRMED as to the plaintiffs previously arrested and subject to prosecution in the state courts. The judgment is REVERSED as to the plaintiffs not arrested and not subject to prosecution in the state courts. The case is REMANDED for proceedings on the merits consistent with this opinion. The plaintiffs urge us to decide several points concerning class certification and the merits. As the district court has had no opportunity to address these issues, however, we decline to do so on this appeal. We have considered and found meritless any other issues the appellants raised which we did not discuss in this opinion.
 
 
 
 [1]
 We have no occasion to address the role (if any) of the United League as an independent entity, since the League is not a party to this case. Cf. Citizens for a Better Environment, 488 F.2d at 1360-61; Gajon Bar & Grill, Inc. v. Kelly, 2 Cir. 1974, 508 F.2d 1317, 1323 (Kaufman, J., concurring)
 
 
 [2]
 The Doran case, decided six days after Hicks, demonstrates how limited was the Court's intertwining holding. 422 U.S. at 928-29, 95 S.Ct. at 2566-2567
 
 
 [3]
 The only way the non-arrested plaintiffs might be able to exploit the pending prosecutions to their benefit could be seek to exercise undue influence over the conduct of their colleagues' criminal defenses. Indeed, not the least of the dangers created by abstention against plaintiffs who are not criminal parties is the threat it fosters to the rights of those who are under prosecution. For example, the would-be federal plaintiff might urge the state defendant to litigate his federal defense when the defendant would prefer to reach a plea bargain; or the plaintiff might urge the defendant to plead guilty so as to remove the Younger obstacle to a federal suit. See Developments in the Law Section 1983 & Federalism, 90 Harv.L.Rev. 1133, 1314-17 (1977)